Job Leard *vs.* The International Paper Company.

Penobscot.    Opinion March 4, 1905.

*Master and Servant.    Negligence.    Assumption of Risk.*

1. When there is known to an employee a safe method of doing the work assigned to him, and he nevertheless uses an unsafe method without direction to do so from his employer, he does so at his own risk, and the employer is not liable to him for any resulting injury.

2. An employee of mature age working at taking down tiers of pulp twelve feet high must be held to have known there was danger of single tiers falling if deprived of the support of adjacent tiers, and that such danger could be avoided by reducing the heights of all the tiers nearly simultaneously. If, nevertheless, he took one tier down separately and in consequence the next tier being thus left without support fell upon him to his injury he must bear the loss and cannot shift it upon his employer.

3. That such an employee was only one of several engaged in the same work, and that he used the unsafe method only in concurrence with them, or at their suggestion, does not relieve him from the risk thereby incurred.

4. To throw such risk upon his employer, the employee must at least show that he was specifically directed by his employer, or by his agent in charge of the work, to use the unsafe method. It is not enough that some or a majority of the workmen in the crew, or some other employee of the same employer having no charge of that work, give such directions.

5. In this case the plaintiff has not produced evidence from which his own due care can be inferred, and the uncontradicted evidence clearly shows that he assumed the risk of injury in doing the work as he did.

On motion by defendant. Sustained.

Action on the case for personal injuries sustained by the plaintiff while in the employ of the defendant. Plea the general issue. Verdict for plaintiff for $803.00. Defendant filed a general motion for a new trial.

The case is stated in the opinion.

*P. H. Gillin,* for plaintiff.

*C. J. Dunn and F. J. Martin,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

EMERY, J.    From the evidence for the plaintiff and the undisputed evidence for the defendant the following must be assumed to be the facts of the case: The defendant company was a manufacturer of pulp at its "Piscataquis Mill" so called. The manufactured pulp was put up in bundles about 30 inches long, 15 inches wide, and 6 inches thick. A large number of these bundles awaiting shipment on board cars at the mill had been piled up in a warehouse adjoining the railroad track. They were piled in tiers as cordwood is piled in tiers, the end of the bundles in the back tier being against the wall of the warehouse, the next tier piled in the same way against that and so on until a stack some 175 feet long and ten tiers wide had been formed. The height of the stack and tiers was some 12 feet. There was no tying of tier to tier, but each tier stood alone except that it was in close contact with the next tier. When shipments were made, bundles would be taken by workmen from this stack and placed on trucks to be wheeled out to be weighed and placed on the cars.

The plaintiff in the employ of the defendant was directed to act with a crew of other workmen in taking bundles from this stack for shipment. At first the crew, the plaintiff with them, removed bundles from the tops of several of the tiers in succession, so that the height of the rear tiers were reduced in proportion as bundles were taken from the front tiers. This method kept up the support given by the front tiers to the back tiers, and prevented the latter falling forward for want of that support. This method evidently protected the workmen from the danger of unsupported tiers falling over upon them. No tiers fell or were likely to fall while this method was pursued.

Later, however, the crew, the plaintiff with them, changed their method and took bundles exclusively from the front tier until only two feet of height of that tier was left, while the next tier was still nearly twelve feet high. Being thus deprived of the support of the tier in front this next tier fell forward under the influence of

vibrations caused by the locomotive and cars near by, and then the next tier to that also fell forward from the same causes. By this fall of these tiers the plaintiff was injured.

The plaintiff insists that the pulp was negligently piled in that the tiers were not tied together, but before coming to that question we have to consider whether the plaintiff must be held to have assumed the risk, or whether the evidence shows due care on his own part.

The plaintiff was sixty-seven years old, had worked in the woods, had worked at cutting and (presumably) piling cord wood, shovelling coal, etc. We think he must be held to have known that there was some danger of high narrow tiers of wood or pulp, as high and narrow as these, falling over if unsupported. He had worked on this stack of tiers of pulp five days before a tier fell. If ordinarily attentive as he must show he was, he must have noticed that the tiers were not tied, but depended on adjoining tiers for support. Knowing this, as we must hold he did, he was bound to exercise care not to incur the danger of the tiers falling for want of support, and if he did incur such danger, the risk of injury from it was his. In changing from a safe method to an evidently unsafe one, the plaintiff acted at his own risk.

The plaintiff, however, urges that this change of method was imposed upon him by the defendant. He at first testified that Mr. Ross gave him and the other workmen the order to change the method. Subsequently he testified that the order came from Mr. Ross or another man, Mr. Morrow, but that he could not tell which. There is no evidence, however, that either Ross or Morrow had authority over the plaintiff or over the method of taking the bundles from the tiers. Mr. Ross was unquestionably merely the shipping clerk with only the duty of counting, weighing and recording the bundles as they were put aboard the cars, while Mr. Morrow was only a laborer like the plaintiff and working with him, but not over him. Giving full credence to the evidence for the plaintiff it does not show against undisputed evidence of the defendant that the change of method can be imputed to the defendant.

The plaintiff cites *Millard* v. *Railway Company*, 173 Mass. 512.

In that case the plaintiff had not been at work upon the pile of lumber and had no occasion to notice how it was piled. The defendant's superintendent suddenly ordered the plaintiff to go on the pile, telling him "to get up there quick and throw that piece of timber into the water". The plaintiff obeyed and while prying off the timber the pile gave way. There was a quick hurrying order which the plaintiff instinctively obeyed without stopping to examine the pile which he had not had occasion to notice. For this reason the case cited is not in point.

*Motion sustained.    Verdict set aside.*